### UNITED STATES v. CITY OF SAULT STE. MARIE.

(Circuit Court, W. D. Michigan, N. D.    March 23, 1905.)

1. MUNICIPAL CORPORATIONS — WATERWORKS — FURNISHING WATER — NEGLI-
GENCE—LIABILITY OF CITY.
    Pub. Acts Mich. 1875, p. 57, No. 62, c. 11, § 1, as amended by Pub. Acts 1879, p. 247, No. 245, gave to cities and villages within the state the right to establish public waterworks to supply water to the inhabitants and for fire protection, but created no liability for injuries occasioned by negligence of the municipality or its officers in the maintenance and use of its system. *Held*, that the providing of a water supply by a municipality under such acts was a governmental function, and carried with it no liability for negligence in its exercise.

2. SAME—CONTRACTS—POWER.
    The city, acting under such acts, had no power to contract with the United States to maintain a specified pressure for fire protection on a military reservation within the municipality's corporate limits, for the purpose of creating a liability to indemnify the United States for loss sustained by the city's failure to maintain such pressure.

On Demurrer to Plaintiff's Declaration.

George G. Covell, U. S. Dist. Atty.

Geo. B. Holden, City Atty. (Warner & Sullivan, of counsel), for defendant.

WANTY, District Judge. This is an action brought by the United States on a contract entered into with the defendant city on July 1, 1902, whereby the defendant agreed to furnish all the water required by the post of Ft. Brady, a military reservation of the United States established within the corporate limits of the defendant, until June 30, 1903, for 15 cents per 1,000 gallons, and at all times to maintain, by direct and continuous pressure at the pumps, or an equivalent pressure from the standpipe, a pressure of from 85 to 90 pounds. On January 3, 1903, while this contract was in force, fire broke out in the barracks at Ft. Brady, which could have been easily extinguished had there been water pressure of between 85 and 90 pounds, as provided by the contract, but there was no water furnished by the defendant during the first two hours of the fire, and after that no sufficient force as provided by the contract, and for that reason the property of the plaintiff, to the value of $68,503.21, was destroyed. The declaration, after alleging the violation of the contract and the loss, states that the claim was duly presented to the city, and payment refused.

The defendant demurs to the declaration, claiming that the defendant city, which is a municipal corporation, owning and maintaining as part of its municipal property a waterworks system, cannot, under the circumstances set out in the declaration, be liable for the loss by fire sustained by the plaintiff for failure to furnish water under the contract. Section 1 of chapter 11 of Act No. 62, p. 57, of the Public Acts of Michigan of 1875, as amended (Pub. Acts 1879, p. 247, No. 245), gave cities and villages within the state the right to establish a public system of waterworks for the purpose of supplying water to the inhabitants and for fire protection. The city of Sault Ste. Marie, then a village, in 1885 took advantage of this act, and established a system of waterworks. As no liability is created by statute for injuries occasioned by the negligence of municipal corporations in the maintenance and use of its waterworks system, in the absence of the contract relied upon by the plaintiff, no action could be maintained for the failure of the defendant to furnish a sufficient amount of water for fire protection. The providing a water supply as authorized by the Legislature under this statute is a function of government requiring the exercise of judgment and discretion, and carries with it no liability for negligence in its exercise. This is the doctrine of many authorities. Dillon on Municipal Corporations (4th Ed.) § 976; Springfield Fire & Marine Ins. Co. v. Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667; Tainter v. Worcester, 123 Mass. 311, 25 Am. Rep. 90; Vanhorn v. Des Moines, 63 Iowa, 447, 19 N. W. 293, 50 Am. Rep. 750; Mendel v. Wheeling, 28 W. Va. 233, 57 Am. Rep. 665; Black v. Columbia, 19 S. C. 412–445, 45 Am. Rep. 785; Edgerly v. Concord, 62 N. H. 8, 13 Am. St. Rep. 533; Patch v. Covington, 17 B. Mon. 722, 66 Am. Dec. 186; Wheeler v. Cincinnati, 19 Ohio St. 19, 2 Am. Rep. 368; Brinkmeyer v. Evansville, 29 Ind. 187; Foster v. Lookout Water Co., 3 Lea, 42; Sievers v. San Francisco, 115 Cal. 648, 47 Pac. 687, 56 Am. St. Rep. 153. It is contended, however, that in this case there was an express contract, supported by a valuable consideration, by which the city undertook to insure the plaintiff an adequate supply of water, and that this contract was binding upon the city. The acts above referred to, under which the defendant was authorized to construct and maintain a system of waterworks, are applicable to all incorporated villages in Michigan. They impose no duty, and the erection and maintenance of such a system is entirely discretionary. Under the authorities above cited, the grant of such power must be regarded as exclusively for public purposes, and political in its character. The making of such a contract, with the obligation alleged to exist in this case, would be an attempt on the part of the officers of the city to create a liability which, in the absence of such a contract, cannot exist. It would seem clear that the officers of the city cannot impose upon the municipality any such burden. The city had no power to assume a liability by contract which is not imposed by law, and this contract of indemnity, if it existed, must be regarded as having reference to existing grounds of liability, and not as creating new ones, and to the extent it was attempted

to create a liability greater than was imposed by law the contract was ultra vires and void.

Dermont v. Mayor, 4 Mich. 435, was an action for injury done to merchandise stored in plaintiff's cellar by reason of the water from one of the public sewers of the city of Detroit, through negligence of the city, flowing back through his private drain into the cellar. This private drain was connected with the city sewer under an arrangement with the city by which the plaintiff paid annually the assessment fixed by the ordinance for the privilege. It was contended on the part of the plaintiff: First, that the city would have been liable in any event; second, that payment for the privilege of connecting with the sewer created liability on the part of the city, if none before existed. The court, in disposing of the case, after holding that no liability existed in the absence of a contract, said:

"Does the payment of the sum required by the ordinance create a liability if none before existed? If the payment by plaintiff imposed any legal obligation on the part of the defendants, it must be on the ground of an express or implied undertaking of the defendants to furnish ample drainage for his premises. From the case presented, such an undertaking was manifestly not contemplated by the parties; but that the sum paid was for the license or permission, and not for any express or implied obligation assumed by the defendants. No express contract is claimed, and we are at a loss to know upon what principle the court could imply one. * * * But, even suppose the defendants had made an express contract with the plaintiff to guaranty to him perfect drainage for the sum paid, it would not avail the plaintiff in this or any other action brought for its breach, because it would clearly exceed the powers of the common council, and therefore would not be binding on the defendants. The common council would manifestly have as much right to insure against damages by fire as against damages by water. Their acts and contracts are only binding on the city when they keep within the scope of their authority, and no such authority is conferred by the charter. A corporation and an individual, in regard to the power of making contracts, stand upon a very different footing. The latter, existing for the general good of society, may do all acts, and make all contracts which are not, in the eye of the law, inconsistent with the great purpose of his creation; whereas, the former, having been created for the specific purpose, not only can make no contract forbidden by its charter, which is, as it were, the law of its nature, but in general can make no contract which is not necessary, either directly or incidentally, to enable it to answer that purpose."

In Vanhorn v. City of Des Moines, 63 Iowa, 447, 19 N. W. 293, 50 Am. Rep. 750, the court says:

"Indemnification against liability must always be regarded as having reference to existing grounds of liability, and not as serving to create new ones. Besides, the city cannot assume liability for negligence in cases where the law did not already impose liability."

Nashville v. Sutherland & Co., 92 Tenn. 335, 21 S. W. 674, 19 L. R. A. 619, 36 Am. St. Rep. 88, was an action brought by the plaintiffs to recover damages for breach of contract between the plaintiffs and the city. The plaintiffs conveyed to the city the right of way through their lumber yard for a sewer pipe to drain into the river a pond lying near plaintiffs' property, for the consideration of $150. The clause in the deed out of which the controversy arose is as follows:

"It is further agreed, and the city of Nashville binds itself, to have said sewer so constructed with a suitable valve as will prevent, in case of high

rise in the river, the flowing of water from the river back through the said pipe or sewer into the lot or premises of said Sutherland and Graves to their injury or damage."

The court says that the effect of this clause, if valid, "is to make the city an insurer of the property of the conveyors against injury or damage by reason of overflow through this valve and pipe." The city laid the pipe and constructed the valve in the fall of 1888. In 1890 an unusually high rise in the river caused an overflow through the valve and pipe, and submerged the property of Sutherland & Co., doing them much damage. The action was instituted by them to recover damages arising from breach of this contract. The court below charged the jury:

"That, if the board of public works and affairs accepted for the city this contract, and in pursuance of it entered upon the plaintiff's premises, and occupied the same by the construction of said drain or sewer, then the city will be bound by all the covenants and stipulations of the contract."

He refused to charge, as requested by the plaintiff in error, that:

"The city is only liable for such negligence as is imposed by law, and the officers of the city cannot bind it to a higher degree of care and skill and diligence than the law imposes. Before the city can be bound by guaranty of its officers, they must have the power, under the charter of the city, to bind the city by such guaranty."

The appellate court says:

"In both respects his honor the circuit judge was in error. It was within the power of the officers of the city to agree to put in any given kind of a sewer and valve (had they done so) as part consideration for the grant of right of way; but they could not, in the absence of charter power, bind the city by a guaranty that they or it would put in such pipe or valve as would prevent overflow to the injury or damage of defendants, and thus make the city insurers of property against such injury. The city is only liable for absence of reasonable care and skill in the execution of such work, and its officers cannot lawfully contract to bind it beyond this without express charter power not claimed or shown in this record to exist."

This case reviews the text of Judge Dillon, and cites a number of cases, and holds "that the board of public works and affairs could bind the city by contract so far, and no further, than it would have been bound by law."

The above cases have been selected from many which hold that officers of a city can bind the corporation by contract so far, and no further, than it would have been bound by law, and that no contract can be made by the officers of the city to increase its liability beyond what the laws under which it is created impose. There is no conflict between the holding of these cases and those cited by the plaintiff, which hold that a city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereign, and governs its people; the other proprietary, quasi private, conferred upon it not for the purpose of governing its people but for the private advantage of the inhabitants of the city itself as a legal personality. In the exercise of the powers of the former class it is bound to transmit its powers to govern to its successive sets of officers unimpaired. But, in the exercise of the powers of the latter class it is controlled by no such rule, because

it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules, that govern a private individual or corporation.

The case most strongly urged by counsel at the hearing was Pikes Peak Power Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A. 333, in which the above principles are quoted from the case of the Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518. In the case of Pikes Peak Power Co. v. City of Colorado Springs it was held that the purpose of the city making the contract under consideration was to enlarge its waterworks and increase its supply of water, and to furnish itself and its inhabitants with electric light, and that it was made in the exercise of its proprietary or business powers, and was controlled by the same rules that govern private corporations. This and the other cases cited by counsel, it seems to me, do not apply to the question in hand. As was said in the case of Nashville v. Sutherland & Co., supra, it was within the power of the officers of the city to agree to put in any given kind of a sewer and valve as part consideration for the grant of right of way, and such a contract would be binding. So in the case of the Pikes Peak Power Co. v. City of Colorado Springs the contract which was made for the enlargement of its waterworks by the city of Colorado Springs would bind the city as it would an individual, but when that·contract is sought to be construed as one of indemnity for loss by water or fire it comes under a different rule, and its stipulations in that regard can have no binding force on the municipality, as such a contract is beyond the power of the officers to make.

The demurrer to the plaintiff's declaration should be sustained.