7135

ANCRUM v. CAMDEN WATER, LIGHT AND ICE CO.

CITIES AND TOWNS—WATER COMPANIES—FIRE LOSSES—CONTRACTS—NEGLIGENCE—CAMDEN.—The obligations of a water company to a citizen of a city with which it has contracted to furnish water for fire protection for damage sustained by negligent failure of the company to supply sufficient water pressure during a fire are limited by the contract between the city and the company. Has a city the constitutional authority to make such contract as would make the water company liable to the individual citizen for damage to his property by such negligence? The contract between the city of Camden and the Camden Water, Light and Ice Company construed not to make it liable to an individual for losses by fire which would have been extinguished if the company had not neglected to comply with its contract in keeping the proper pressure on its water pipes.

Before GARY, J., Kershaw, August, 1908. Reversed.

Action by Anna Calhoun Ancrum against Camden Water, Light and Ice Company. The Circuit decree overruling the demurrer of defendant, except the statement of the pro-

visions of the contract, and the issues which appear in the opinion, is as follows:

"Upon the hearing of the demurrer it was conceded on both sides that the authorities are in conflict, a great majority of the decisions of the different States holding, as contended for by defendant, that there is no cause of action in favor of a plaintiff whose property has been destroyed or damaged through the failure of a water company to supply an adequate supply of water to extinguish a fire which consumed the property of such plaintiff.

"The cases so holding proceed upon the theory that there is a want of privity of contract between such plaintiff and defendant which disqualifies such plaintiff from suing for a breach of contract or for a breach of any duty growing out of such contract. The cases sustaining this contention are collated at length in 6 L. R. A. (N. S.), at page 429, *et seq.*

"The cases holding a different view are not so numerous, and in so far as my research extends, are limited to the States of Kentucky, Florida, North Carolina and Georgia. These cases are based upon the theory that, while conceding that there is no privity or contractual relation between the citizen and such water company, yet they hold that when a private corporation, in the exercise of a franchise granted by a municipality, authorized so to do by its charter or by statute, which confers upon such corporation the right to use the streets of the city, on condition that it will therein lay its mains and furnish the municipality and its inhabitants with a supply of water at fixed charges or tolls, and actually engages in the business of supplying the general public with water, it thereby becomes liable as a public service corporation, and, as such, is liable for an injury done to one to whom it owed a public duty, not by reason of its contract, but for the reason that it is a tort to negligently fail either in the performance or in the omission of such duty. That the action is one *ex delicto.*

"This view is sustained in a very learned opinion delivered by Judge Evans, in the case of *Freeman* v. *Macon Gas Light and Water Company,* reported in 126 Georgia, 843, where the doctrine is announced in these words: 'The water company, by entering into the contract which the General Assembly authorized the city to make with that company, accepted the privilege of supplying the citizens of that city, as such, with water upon certain terms, and became a public service corporation with an express statutory duty to perform. This duty the company owed to every private consumer of water, independently of any contract duty it owed to the municipality itself, considered as a municipal corporation engaged in the discharge of governmental functions. For a breach of this statutory duty the company could be held liable in tort by the aggrieved member of the public, though he was no party to the contract between the city and the water company. A private person may not only sue a public service corporation for a breach of duty owing to him, but he may, by mandamus, even enforce the performance by the corporation of its public duty as to matters in which he has a special interest. *Savannah Canal Co.* v. *Shuman,* 91 Ga., 400,' to which may also be added our own case of *Gwinn* v. *Telephone Co.,* 69 S. C., 443.

"In the case of *Guardian Trust and Deposit Company* v. *Fisher,* reported in 200 U. S., 57, in an opinion delivered by Mr. Justice Brewer, the same line of thought as that contained in the Georgia case, cited above, is held to be the law.

"In the latter case the complaint alleges that the 'defendant company was culpably negligent and wilfully careless of its duty and obligations, both to the city of Greensboro and its inhabitants under the said contract, and by virtue also of the duties, obligations and responsibilities which it assumed when it undertook to supply water to the city of Greensboro and its inhabitants for a stipulated price, which was paid to it by said city.' It further alleged that the water

company carelessly, wilfully and negligently failed to keep a sufficient quantity of water in its storage water tank in the said city of Greensboro, necessary for the purposes of extinguishing fire, etc.   In a full and well considered opinion in this case, the conclusion is announced : 'While a citizen may have no individual claim against a company contracting to supply water to a city for its failure to do anything under the contract, he may have a claim against it, after it has entered upon a contract and is engaged in supplying the city with water for damages resulting from negligence, and in such a case the action is not for breach of contract, but for tort.'

"This, I think, is the true doctrine, and, inasmuch as the question is an open one in this State, I feel at liberty to rest my decision upon that line of cases whose reasoning appeals to my judgment.

"It is, therefore, ordered that the demurrer be overruled."

From this decree the defendant appeals.

*Messrs. Kirkland & Smith,* for appellant, cite: 6 L. R. A. (N. S.), 1176 ; 88 Tex., 233 ; 119 Mo., 304 ; 124 N. C., 328 ; 52 La. Ann., 1243 ; No. 7 Mich. Law Rev. May, 1905, pp. 501-7, 513-15 ; 23 L. R. A., 146 ; 6 L. R. A. (N. S.), 429 ; 19 S. C., 412 ; 126 Ga., 843 ; 89 Ky., 340 ; 12 Ky. L. R., 824 ; 112 Ky., 175 ; 128 N. C., 375 ; 115 Fed., 184 ; 200 U. S., 57 ; 53 W. Va., 348 ; 75 Pac., 773 ; No. 6 Mich. L. Rev. Apl., 1905, pp. 442-3 ; 2 Dillon Mun. Corp., secs. 975, 976 ; 79 Ala., 233 ; 30 L. R. A., 660 ; 78 Ga., 241 ; 28 W. Va., 233 ; 123 Mass., 311 ; 29 Ind., 187 ; 33 Wis., 314 ; 53 Mo., 159 ; 63 Ia., 447 ; 19 Ohio St., 19 ; Add. Torts, sec. 1288 ; 52 Am. R., 334 ; 10 M. & W., 115 ; 100 U. S., 195 ; 69 S. C., 443 ; 47 Am. St. R., 258 ; 78 Miss., 389 ; 56 S. C., 446 ; No. 6 Mich. L. Rev., pp. 451-2 ; 94 Fed., 238 ; 37 Neb., 146 ; 88 Tex., 233 ; 48 Kan., 12 ; No. 6 Mich. L. Rev., 455 ; 81 Wis., 48.

*Mr. W. B. de Loach,* contra, cites: 6 L. R. A. (N. S.), 1171; 124 N. C., 328; 128 N. C., 375; 36 L. R. A., 535; 89 Ky., 340; 7 L. R. A. (N. S.), 917; 61 S. E., 884; 115 Fed., 184; 200 U. S., 57; 44 Am. St. R., 43; 61 S. C., 83; 69 S. C., 434; 81 S. C., 318.

April 9, 1909.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  The defendant, Camden Water, Light and Ice Company, appeals from an order of the Circuit Court overruling a demurrer to the complaint.  The question to be decided is, whether the complaint states facts sufficient to constitute a cause of action.  These are the material allegations: The defendant owns and operates waterworks in the city of Camden, under a contract of date 21st May, 1903, entered into by the city council and the defendant with proper legal sanctions, which conferred upon the defendant the exclusive franchise for seventeen years to furnish to the city of Camden, water for the extinguishment of fire and other municipal purposes, and to the inhabitants of the city, water for private purposes.  On 27th June, 1907, a four story building of the plaintiff was destroyed by a fire, which would have been extinguished, without great damage, by the fire department of the city, but for the fact that on account of the negligence of the defendant, the water mains and hydrants, through which the defendant had contracted to supply water for the extinguishment of fires, furnished no appreciable water pressure.  The plaintiff had insurance for $3,000, but her net loss from the fire was $12,000, and for this sum she demands judgment against the water company.

The important inquiry whether the defendant is liable to a private citizen under such a state of facts depends, as we shall endeavor to show, on the terms of the contract which is attached to the complaint as a part thereof.  Hence it is necessary to set out in full such portions as bear on the

issue.    The general undertaking of the defendants as set
out in Section 1 is, "to lay, maintain and operate a system
of water pipes in, over, across and along the streets, alleys
and public places of and within said city of Camden for the
distribution of water for municipal, domestic, business and
personal uses, and likewise for the same period, to build,
lay, place and operate and maintain all necessary hydrants,
service pipes, stop and valve boxes, and other appliances
usually employed in the operation of a municipal water-
works system."    The details of the defendant's obligations
are contained in these sections:

3. "That it will use the Johnson Springs, so-called, near
said city, as its source of supply, and that it will furnish
from said source and from such other sources as may be
hereafter agreed upon, to the party of the first part and its
successors, and to the inhabitants of the said city of Cam-
den, an abundant and sufficient supply of pure, wholesome
and portable water for domestic, business, personal and
municipal purposes, and for the extinguishing of fires for
and during the full term of this contract.

4. "That it will cause to be constructed as a part of said
water system, a Jewell Gravity Filter of five hundred thou-
sand (500,000) gallons daily capacity and will cause all
water introduced into the pipes and distributing system of
and within said city to be carefully filtered through said fil-
tering apparatus; and further, and in connection with said
filter, will construct a pumping reservoir with brick walls
and metal roof, and of sufficient size to provide a constant
supply of water to the pumps, together with a pumping
station to be supplied with duplicate engines, so arranged
that either or both engines may be employed at the same
time as occasion may require, and said engines and pumps to
be of sufficient capacity to furnish an ample supply of water
for the purpose hereinbefore indicated at all times during
the term of this franchise.    And said plant shall be con-

19—82

structed according to the plans and specifications hereto
attached and made a part of this contract.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

7. " &ast;  &ast;  &ast;  &ast;  &ast;; that all pipe, hydrants
and connections shall be of standard weight; that there
shall be furnished by said party of the second part to the
party of the first part, a certificate of manufacturers of said
pipe and appliances, showing that the same have been tested
at a hydrostatic pressure of 250 pounds to the square inch;
that in addition to the twenty-five (25) fire hydrants now
set and connected with the pipe system in said city of Cam-
den, the party of the second part shall set ten (10) other fire
hydrants of modern type with double delivery, and so ar-
ranged as to connect with hose couplings of two and one-
half (2 1-2) inches in diameter.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

9. "That the fire hydrants above referred to shall be kept
at all times in good repair and ready for immediate service,
and so that when an alarm is given and fire pressure is
called for, said hydrants shall furnish efficient streams for
extinguishing fires in all portions of said city."

These provisions are found in the contract to secure to
the city of Camden, as a party to the contract, compliance
by the water company with its obligations:

10. "That the hydrants shall be in the charge of the chief
of the fire department, and shall be subject to inspection by
him, and in case of any hydrant being found out of repair,
he shall, in writing, notify the mayor of said city and the
superintendent of the waterworks plant; and if the same is
not carefully repaired in one week after giving such notice
in writing, said city shall have the right to deduct from the
hydrant rent all hereinafter agreed to be paid, the sum of
ten dollars ($10) per month until said hydrant is put in
working order.

20. "The party of the first part, and all users of water under this franchise, shall have the right to inspect the source of supply and all machinery and other appliances employed by the party of the second part in connection with the filteration, storage, pumping and distribution of water at all times during ordinary business hours, such inspection to be made in good faith and not for the purpose of harassing or annoying the party of the second part or in anywise interfering with the performance by it of its public duties under this franchise.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

25. "And it is further expressly stipulated and agreed that, in the event that the party of the second part, its successors or assigns, shall wilfully fail, neglect or refuse to well and truly carry out and perfom all and singular the duties, agreements and covenants hereby imposed, that then and in such event this franchise and contract and all the rights and privileges granted thereby by said first party to the second party shall cease and determine and be thereafter held and deemed to be null and void, anything herein to the contrary notwithstanding: *Provided, however,* That temporary failure to furnish water and service under this contract due to breakage or other casualty, shall not be deemed to be failure or refusal on the part of the second party hereunder."

In *Black* v. *Columbia,* 19 S. C., 424, a municipal corporation owning its own waterworks was held not to be liable to an inhabitant of the city, whose property was destroyed by fire, when it would have been saved but for the neglect of the city to provide suitable engines or fire apparatus or to provide and keep in repair public cisterns. Since that case was decided municipal corporations have, in this State by statute, been made liable for injuries to persons or property, received "through a defect in any street, causeway, bridge or public way or by reason of defect or mismanagement of anything under the control of the corporation within the

limits." Civil Code, section 2023. We are not now concerned with the liability of a city for a fire loss of one of its inhabitants, which would not have occurred but for the negligence of the city to provide an adequate supply of water to extinguish the fire. This liability would have to be passed upon as a preliminary question in this case, if the law imposed upon a city the duty of providing public waterworks. For it seems apparent where a public duty is required of a municipality, one who contracts with a city to perform for it the duty imposed on it by law incurs the same liabilities that the law imposed on the city itself. But the statute law of the State does not require municipal corporations to maintain waterworks; on the contrary, the statutes on the subject negative the idea of command or requirement, in that they in express terms merely authorize towns and cities to build and operate waterworks as municipal property. 22 Stat., 83, 23 Stat., 49. Hence, when the statute of 1902, 23 Stat., 1039, empowered cities and towns "to grant to private persons or corporations the exclusive franchise of furnishing light or water to said cities and towns and inhabitants thereof," without imposing any limitation on the power, except that the franchises to be valid should be approved by a vote of two-thirds of the board of aldermen, and the majority of the popular vote, and that the grant or the franchise should provide a maximum water rate, it left the municipality free as to the other terms and conditions of the franchise. Thus there was no obstacle to the city council providing in the contract and franchise with the water company any safeguards for the welfare of the city or of its inhabitants who were to use the water or whose property was to be protected from fire loss. For even if it be considered an illegal or unfair discrimination against other taxpayers, for the city to pay from the general municipal revenue for such indemnity for all whose property was subject to fire loss, such discrimination could not avail the water company. Equally

free were the city and water company to agree on such
sanctions and penalties as they saw fit for the enforcement
of the obligations assumed by the water company. Further,
the city, as a municipality, and any of its inhabitants, bene-
ficiaries of the contract on the one side, and the water com-
pany on the other side, were entitled to such damages re-
sulting to them from a breach of the contract as were fairly
within the contemplation of the parties, either expressly
provided by the language of the instrument or to be fairly
implied from it.

These propositions are nothing more than the application
of familiar principles of law to the contract under considera-
tion. But inasmuch as some of the cases deny the right of
the individual citizen to recover in a case like this, on the
ground that there is not such privity of contract between the
citizen and the water company as to enable him to bring an
action on his own behalf, some further attention should be
given to that point. We think it is true that the city does
not make the contract as the agent of the individual citizen,
and that no right of action could accrue to the citizen on the
ground that the city as his agent makes the contract for
him as its principal. That relation does not exist. The
relation of agency implies a principal, controlling the action
of an agent within the scope of the agency. The munici-
pality is not subject to the control of an individual citizen
or of a majority of its citizens, or even of the whole body
of its citizens speaking unanimously, except insofar as such
control is conferred by statute. A municipal corporation is
defined to be "a legal institution formed by charter from
sovereign power, erecting a populous community of pre-
scribed area into a body politic and corporate with corporate
name and continuous succession, and for the purpose and
with the authority of subordinate self-government and im-
provement and local administration of affairs of State."
28 Cyc., 117. The inhabitants of a city have no inherent
right to direct its affairs. All their rights are conferred on

them by the law making power of the State. The General
Assembly has made any contract for a municipal water
supply invalid, unless confirmed by a vote of two-thirds of
the qualified electors of the city, but that does not make the
city the agent of a single elector or of the aggregate two-
thirds of the electors. In short, the municipality is not in
any legal sense the agent of its inhabitants either singly or
collectively, but is a legal institution in the nature of a gov-
ernmental agency, deriving its powers from the State. For
these reasons, we are entirely unable to agree with those
Courts which hold the water company liable in a case like
this, on the ground that in contracting with the city it con-
tracted with the individual citizen through the city as his
agent.

But the relationship of agency is not necessary to confer
on the individual citizen the legal right to benefits pro-
vided for him by the city in its contract with a water com-
pany. The English rule is, that a third person cannot sue
upon a promise made for his benefit where he is a stranger
both to the promise and to the consideration. 71 Am. St.,
176, note; 9 Cyc., 374. This rule has been adopted in a
number of the States with the modification that such third
person may sue if he has some legal or equitable interest
in the contract. If the English doctrine or that doctrine
modified as above indicated should be applied, even then an
inhabitant of a city made the benificiary, as one of a class,
of a contract by the city with a water company, would fall
within it; for such inhabitant, by his taxes, contributes to
the consideration of the contract, and as an inhabitant, he
has a vital interest in its performance. But the rule in this
State and some of the other States is broad without the limi-
tations of the English rule, either in its original or modified
form. It is thus stated in *Brown* v. *O'Brien,* 1 Rich., 270:
"Where one person makes a promise for the benefit of a
third person, that person may maintain an action on such
promise." *Duncan* v. *Moon,* Dudley, 232.

Having reached the conclusion that the city of Camden could contract with the defendant that it would be liable to its inhabitants, as individuals, for fire losses due to the defendant's neglect to keep an adequate water supply, and that the plaintiff could sue on such a contract, the pivotal question recurs whether the city of Camden did make a contract imposing that liability on the water company.

In the first place, it is to be observed that the presumption is, that parties contract for their own benefit, and not for that of others not parties to the contract. So a contract entered into by a city is presumed to be for the city's own benefit, as a municipality, that is, for the benefit of the municipal public as a whole and not for the benefit of its inhabitants as individuals. Hence, in order for the plaintiff to have the benefit of the contract, it is not sufficient for her to show that the defendant contracted with the city to have an adequate supply of water to extinguish fires, but she must show further that it was intended that she should be the direct beneficiary of this provision to the extent that the defendant should indemnify her for fire losses due to its negligence. There will hardly be difference of opinion that there are many public municipal purposes to be attained, by a contract of this sort, leaving out of view the citizen as an individual. The general municipal purpose of a water supply is to promote the prosperity of the city. This it does by lessening the risk of destruction of property by fire, by lowering the rate of insurance, increasing the general sense of security and, therefore, the general happiness, diminishing the risk of numbers of persons being thrown out of employment, and generally in giving steadiness and confidence to the life and enterprises of the city. These are the inducements to the city for entering into the contract, and it is for these municipal purposes that it pays for the maintenance of waterworks for fire protection. For the attainment of these municipal ends, the city has the right to pay out public funds. It may well be doubted whether it has the

right to apply public funds to the larger compensation which
a water company of necessity must charge for the enormous
peril of having to pay for all private property lost by its
negligence. Such expenditure of municipal funds raised
by taxation of all property would be an unjust discrimina-
tion in favor of those whose property is exposed to fire loss,
and against those whose property is not subject to that
peril. There is at least a strong presumption against a
municipality undertaking to pay for such indemnity from
the public revenue. True, the water company would be
liable only for losses due to its negligence. But negligence
would be chargeable to the company for its inspector of
machinery to overlook a defect which he ought to have
observed in time to remedy it, for a pumper to fail in his
duty, for an employee carelessly to break a main so that the
water would be wasted, for the company not to have ade-
quate machinery; in brief, for it to fail in the opinion of a
jury to be diligent in any of the almost innumerable details
incident to the conduct of such a business. In addition to
this, if it is considered, as is held in some jurisdictions, that
the action for loss in cases like this is an action of *tort,* then
for their fire losses the insurance companies would be sub-
rogated to the rights of the owner of the property and en-
titled to recover from the water company. *Mobile Ins. Co.*
v. *Columbia, & R. R. Co.,* 41 S. C., 408, 19 S. E., 858; 44
Am. St., 721, note; *Aetna Insurance Co.* v. *C. & W. C. Ry.
Co.,* 76 S. C., 101, 56 S. E., 788; *Am. B. Co.* v.*National
etc. Bank,* 99 Am. St. R., 504, note. That a water com-
pany assuming such liabilities would have to demand very
large compensation to have any profit or even to save itself
from bankruptcy is most obvious. When it is asserted that
a city has undertaken to pay for such indemnity to its indi-
vidual inhabitants and that the water company has assumed
it, the contract relied on ought to show clearly that such
payment by the city and indemnity by the water company
were intended.

The contract now under consideration contains no direct undertaking to respond to the individual inhabitant for fire losses; the stipulation that it shall keep a sufficient water supply for the protection of public and private property is naturally to be referred to the purpose of the city to promote the general municipal welfare in the manner we have pointed out, rather than to indemnify individual property owners from fire loss; the compensation to be paid is fifty dollars each for seventeen hydrants—a sum on its face utterly inadequate to meet the expenses of furnishing the water and to afford compensation for the enormous risk the plaintiff insists was assumed. These considerations seem to show plainly that the parties did not contemplate by their contract the assumption of liability by the water company for the plaintiff's fire losses, arising from its neglect to furnish an adequate water pressure.

There is another strong reason for this conclusion. When parties themselves stipulate in the contract what shall be the consequences of a breach of the agreement, such stipulation, if reasonable, is controlling and excludes other consequences. 8 Am. & Eng. Enc., 636; *Allen* v. *Brazier,* 2 Bail., 293; *Covington* v. *Ex's of Lide,* 1 Bay, 158; *Worrel* v. *McClenaghan,* 5 Strob., 115; *Williams* v. *Vance,* 9 S. C., 344; *Terry* v. *Southern Ry. Co.,* 81 S. C., 279. In this case the parties agreed by the contract that the consequences to the water company for a neglect to perform any of the duties undertaken by it should be a forfeiture of its franchise, except "That temporary failure to furnish water and service under this contract due to breakage or other casualty, shall not be deemed to be failure or refusal on the part of the second party hereunder." For the temporary failure to keep the hydrants in repair, the forfeiture of ten dollars a month for each hydrant was provided. Thus the contract fixed and limited the consequences of defendant's breach, and the Court cannot add to the contract by imposing other and additional consequences.

Authorities holding the plaintiff entitled to recover in a case such as is stated in the complaint, lay much stress on the fact that the defendant is a public service corporation. While this is true, it is obvious the water company's status as a public service corporation rests on the contract, and liability for damage cannot be imposed on it beyond that contemplated by the contract. *Hughes* v. *Tel. Co.*, 72 S. C., 516, 32 S. E., 107; *Poteet* v. *Tel. Co.*, 74 S. C., 491, 55 S. E., 113. Even a common carrier of goods is not liable beyond that. When a carrier accepts goods for transportation, it contracts to be liable for the value of the goods, but it is not liable for anything else, unless such additional liability is within the purview of the contract of carriage. *McKerall* v. *R. R. Co.*, 76 S. C., 342, 56 S. E., 965; *Strange* v. *Ry. Co.*, 77 S. C., 182, 57 S. E., 724; and cases cited. And the carrier may limit the amount for which it will be liable by special contract to that effect. *Johnstone* v. *Ry. Co.*, 39 S. C., 56, 175 S. E., 512; *Frasier* v. *Ry. Co.*, 73 S. C., 140, 52 S. E., 964.

We conclude that the obligations and liabilities of the parties are limited by the contract, and that the defendant did not contract to pay the losses of all the citizens of the city of Camden by fires which would have been extinguished if it had not neglected to comply with its contract.

The cases in other jurisdictions are irreconcilable. But the conclusion we have reached is in accord with the great weight of authority. A number of Courts of last resort, including the Supreme Court of the United States, hold, contrary to our conclusion, that in a case of this kind the water company is liable. We cite only one case from each State. *Trust Co.* v. *Fisher*, 200 U. S., 59, 50 L. Ed., 367; *Gorrell* v. *Greensboro Water Sup. Co.* (N. C.), 70 Am. St. R., 598; *Mugge* v. *Tampa Waterworks Co.* (Fla.), 6 L. R. A. (N. S.), 1171; *Coy* v. *Indianapolis G. Co.* (Ind.), 36 L. R. A., 535; *Lexington Hyd. &c. Co.* v. *Oots* (Ky.), 84 S. W., 774.

But the great majority of the Courts hold in such case, there is no liability. *Bush* v. *Artesian &c. W. Co.* (Id.), 95 Am. St., 161; *Fowler* v. *Athens City W. W. Co.,* (Ga.), 20 Am. St., 313; *Fitch* v. *Seymour* (Ind.), 47 Am. St., 258; *Becker* v. *Keokuk Waterworks* (Ia.), 18 Am. St., 377; *Mott* v. *Cherrydale W. &c. Co.* (Kan.), 30 Am. St., 267; *House* v. *Houston W. Co.* (Tex.), 28 L. R. A., 532; *Allen & Currey* v. *Shreveport W. W. Co.* (La.), 104 Am. St. R., 525; overruling *Planters Oil Mill* v. *Monroe W. W. &c. Co.* (La.), 27 So., 684; *Boston Safe Deposit & T. Co.* v. *Salem W. Co.* (Mass.), 94 Fed., 238; *Wilkinson* v. *Light &c. Co.* (Miss), 28 So., 877; *Howsmon* v. *Trenton W. Co.* (Mo.), 41 Am. St. R., 654; *Eaton* v. *Fairburg W. W. Co.* (Neb.), 40 Am. St. R., 510; *Ferris* v. *Carson W. Co.* (Nev.), 40 Am. Rep., 485; *Montgomery* v. *Montgomery W. W. Co.,* 79 Ala., 233; *Nickerson* v. *Bridgeport Hyd. Co.* (Conn.), 33 Am. Rep., 1; *Wainwright* v. *Queens County W. Co.,* 28 N. Y. Sup., 987; *Blunk* v. *Dennison &c. Co.* (Ohio), 73 N. E., 210; *Beck* v. *Kitanning W. Co.* (Pa.), 11 Atl., 300; *Foster* v. *Lookout Mt. W. Co.* (Tenn.), 3 Lea, 42; *Britton* v. *Green Bay &c. W. W. Co.* (Wis.), 29 Am. St. R., 856; *Ukiah* v. *Ukiah W. Co.* (Cal.), 100 Am. St. R., 107.

The judgment of this Court is, that the judgment of the Circuit Court be reversed.