GERMAN ALLIANCE· INS. CO. v. HOME WATER SUPPLY CO.

(Circuit Court· of Appeals, Fourth Circuit. November 4, 1909.)

No. 882.

1. WATERS AND WATER COURSES (§ 206*)—MUNICIPAL WATER SUPPLY—CONTRACT WITH CITY—BREACH—LIABILITY TO PROPERTY OWNER.

Where a water company contracted to furnish water to a city for fire and other purposes by an agreement to which property owners were not parties, and there was neither ordinance nor provision in the contract between the city and the company imposing a liability on the latter to property owners, the company was not liable ex contractu for breach of the contract, to a property owner whose property was destroyed by fire by reason thereof, on the theory that the city acted as agent for the citizens separately and individually in making the contract. or that the property owners furnished the consideration for the agreement, or at all.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 301; Dec. Dig. § 206.*]

2. WATERS AND WATER COURSES (§ 206*)—PUBLIC WATER SUPPLY—CONTRACT WITH CITY—INJURIES TO PROPERTY OWNERS—LIABILITY IN TORT—"PUBLIC CALLING"—"DANGEROUS CALLING."

Where defendant contracted with a city to furnish water for fire and other purposes, it did not thereby enter into a "public calling" in any sense different from the public duty to supply the city with water with which it could combat fire; nor was the water company's business a "dangerous calling," so as to impose upon it a duty to property owners within the city to furnish proper fire pressure so that for mere nonfeasance property owners damaged could recover against it in tort.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 301; Dec. Dig. § 206.*

For other definitions, see Words and Phrases, vol. 2, p. 1827.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

Action by the German Alliance Insurance Company against the Home Water Supply Company. From a judgment dismissing the action on sustaining a demurrer to the complaint, plaintiff brings error. Affirmed.

Hartwell Cabell (Wilson & Osborne, on the brief), for plaintiff in error.

Ralph K. Carson (Kirkland & Smith, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and Mc-DOWELL, District Judges.

McDOWELL, District Judge. This is an action at law, brought by an insurance company against a water company; the complaint being drawn in accordance with the Code of South Carolina. The facts may be very briefly stated. Under a contract between the city of Spartanburg, S. C., and a water company (defendant in error), the latter was, as is alleged, required to lay six-inch water mains, to place hydrants at certain intervals, and to maintain a certain pressure. It is alleged that the water company failed to comply with its contract in the respects above mentioned, and that in consequence a fire, which could have been readily extinguished in its incipiency if the contract had been complied with, destroyed a number of houses belonging to the Spartan Mills, a corporation, doing business in Spartanburg, with all of its property in the city, and a city taxpayer, entitled to protection from fire. The houses had been insured by the plaintiff below (plaintiff in error), and, after payment of the losses to the mill company by the insurance company, the former executed a "subrogation receipt" to the insurance company, whereby the rights of the mill company were assigned to the insurance company. A demurrer to the complaint was sustained and the action dismissed.

As no question is made as to the right of the insurance company to maintain an action where a property owner could maintain it, we shall consider only the alleged liability to the property owner. It should also be stated that we have here no contract between the water company and the property owner, and neither ordinance nor provision in the contract between the city and the water company to the effect that the water company shall be liable to the property owners.

In considering the question of the alleged liability of the water company to the property owner, let us first consider the action at bar as being ex contractu, founded expressly on breach of contract. The property owner is not a party to the contract, and it is conceded that the city does not owe him the duty of furnishing water. The benefit to him is clearly not a direct benefit. A mere supply of water, adequate in amount and under full pressure, would not of itself avail him anything. It seems to us that the overwhelming array of authority denying liability must be held sound in result on the accepted principles of the law of contract. The argument that the city acts as the agent of the property owners in making such contracts does not seem to us to be sound. The

city is in some sense the agent of the citizens in the aggregate. It is not the agent of the citizens separately and individually. This theory, if carried to its logical conclusion, would result in intolerable conditions, and is subversive of thoroughly established principles. No further weight seems to us to be given the argument in behalf of the property owner by the fact that the consideration for the water company's agreement comes in large measure from the property owners. The connection is too remote. The water company in case of default in payment by the city must sue the city and force it to collect from the citizens. The water company cannot sue the individual citizen.

For rulings in favor of the right of recovery, see Paducah Lumber Co. v. Paducah Water Co., 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536 (which has been followed by some subsequent cases in Kentucky); Gorrell v. Water Co., 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598 (which was followed in Fisher v. Supply Co., 128 N. C. 375, 38 S. E. 914); Planters' Oil Mill v. Monroe Waterworks, 52 La. Ann. 1243, 27 South. 684; Mugge v. Tampa Co., 52 Fla. 371, 42 South. 81, 6 L. R. A. (N. S.) 1171, 120 Am. St. Rep. 207. We are also referred to Crone v. Stinde, 156 Mo. 262,[1] which we have not been able to see, but which is said to intimate that Howsman v. Trenton Co., 119 Mo. 304, 24 S. W. 784, 23 L. R. A. 146, 41 Am. St. Rep. 654, and Phœnix Ins. Co. v. Trenton Company, 42 Mo. App. 118, are unsound.

A sufficient number of the decisions against the right of recovery are found in Lovejoy v. Bessemer Co., 146 Ala. 374, 41 South. 76, 6 L. R. A. (N. S.) 429; 1 Farnam on Waters, § 160b; 30 Am. & Eng. Ency. (2d. Ed.), 429 et seq. See, also, Ancrum v. Camden Co., 82 S. C. 284, 64 S. E. 151, 21 L. R. A. (N. S.) 1029.

Can a right of action be maintained on the theory that this is an action in tort?

Having reached the conclusion that the property owner has no right of action ex contractu, it would seem to follow that no liability in tort can exist, because the assumed duty arises only from a contract by which the plaintiff is not given any right of action. However, the opinion in Guardian Trust Co. v. Fisher, 200 U. S. 57, 26 Sup. Ct. 186, 50 L. Ed. 367, seems to us to call for the discussion which follows, especially in view of the following:

"* * * If the company proceeds under its contract, constructs and operates its plant, it enters upon a public calling. It occupies the streets of the city, acquires rights and privileges peculiar to itself. It invites the citizens, and, if they avail themselves of its conveniences and omit making other and personal arrangements for a supply of water, then the company owes a duty to them in the discharge of its public calling, and a neglect by it in the discharge of the obligations imposed by its charter, or by contract with the city, may be regarded as a breach of absolute duty, and recovery may be had for such neglect. The action, however, is not one for breach of contract, but for negligence in the discharge of such duty to the public, and is an action for tort."

The first inquiry, of course, is whether or not the Supreme Court, in the case above mentioned, has rendered a binding decision on the right of the property owner to recover from a water company under the circumstances alleged in the case at bar. We are of opinion that

[1] 55 S. W. 863, 56 S. W. 907.

the court did not in that case decide this question. In that case the Supreme Court did decide that the judgment in the state court was a judgment in tort and also that the effect of section 1255, Code N. C. 1883, was to make a judgment in tort against the successor in interest of a corporation mortgagor as effective as such a judgment against the mortgagor. In the opinion it is said:

"The statute subordinates the mortgage to judgments for torts. Now what is the judgment? It is a determination that upon the facts stated the plaintiff is entitled to recover so much money. It may not be essential that it recite whether the facts stated show a breach of contract or a tort, but it is essential that the judgment should be considered as a determination that upon those facts the plaintiff is entitled to recover. And it must be assumed that under the statute the mortgagee and the bondholders it represents agree to accept the judgment as conclusive in this respect, or, if not conclusive, at least prima facie, evidence."

We have therefore a case in which the mortgagee had in effect contracted that its property, so to speak, should be bound by any judgment obtained without fraud against the mortgagor (or its successor), if the judgment were in tort. It follows that the character of the judgment obtained by Fisher in the state court was the only question presented to and decided by the Supreme Court. In other words, the question before the court was this: It being conceded in effect that Fisher had a right of action against the supply company, can this right of action be properly classed as sounding in tort? It is also to be remembered that the judgment in Fisher v. Supply Company came from North Carolina, one of the few states holding that there is privity of contract between the water company and the property owner. Gorrell v. Water Co.. 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598. Such being the fact, there being a conclusively adjudicated privity of contract and a liability ex contractu, the ruling that there is a liability in tort for neglect in the performance of the contract is simply affirmatory of all of the large class of cases illustrated by the liability in tort of a common carrier to its passengers.

The question before us is therefore not settled by Guardian Trust Co. v. Fisher, supra; but in view of what is there said some discussion of the question is necessary.

It can only tend to clearness of thought to lay out of consideration at the outset that large class of cases in tort in which there is a direct contractual relation between the plaintiff and the defendant; such as the liability in tort of a common carrier to its passenger, including the "invitation to alight" cases; of the blacksmith to his customer, where the blacksmith by incompetence or negligence lames the horse; of the attorney to his client; and of the physician to his patient, where the contract of employment is made by the patient. In all such cases there is a relation between the plaintiff and defendant such as does not exist here—a clear privity of contract.

It will also tend to clearness to lay aside those cases in which liability in tort arises from a violation of statute or lawful ordinance by the defendant. For instance, cases in which the plaintiff is injured at a public crossing by the failure of a railway company's servants to sound warnings or to check the speed of the train, in violation of stat-

utes or ordinances. In such cases there is no contract relation at all, but the duty owing by the defendant to the plaintiff is more readily referable to the statute or the ordinance than to the common-law duty.

Cases in which there is no statute or ordinance governing the duty of a railway company at public crossings will be considered later on. And it may not be amiss to here call attention to the fact that in such cases the complaint is of a misfeasance, while in the case at bar the complaint is for what is to be classed as a nonfeasance.

Can it be said that the defendant here has entered upon the performance of a public duty? If so, there is a liability in tort to the property owner specially injured by neglect in the performance of such duty.

We are cited to Robinson v. Chamberlain, 34 N. Y. 389, 90 Am. Dec. 713, and Fulton Ins. Co. v. Baldwin, 37 N. Y. 648. In the first of these cases the defendant had contracted with the state to keep in repair the locks on certain sections of the Erie Canal, and it was held that:

"A public officer, or a contractor engaged to perform the duties of a public officer, is liable for negligence or malfeasance to any one sustaining special damage in consequence thereof."

In the Baldwin Case the defendant had contracted to keep a section of the canal free from obstructions and was held liable to an insurance company which had paid losses to the owner of a canal boat sunk by reason of a snag negligently left in the canal by the contractor.

In Robinson v. Chamberlain, supra, it is said:

"The only question in this case is whether an action will lie against a contractor, employed by the state, pursuant to law, to keep a portion of the canals in proper condition and repair, who neglects his duty, whereby the plaintiff sustains special damage.

"It is a familiar doctrine that, 'when a corporation or individual is bound to repair a public highway or navigable river, they are liable to indictment for the neglect of their duty' (Per Nelson, J., in People v. Corporation of Albany, 11 Wend. [N. Y.] 539 [27 Am. Dec. 95]).

"A navigable river is a public highway; our canals, open and free to all for navigation, upon payment of the toll fixed by law, as our turnpikes are, for travel upon like terms, are, I think, in every sense, public highways.

"A failure to keep a public highway in repair by those who have assumed that duty from the state, so that it is unsafe to travel over, is a public nuisance, making the party bound to repair liable to indictment for the nuisance, and to an action at the suit of any one who has sustained special damage."

In the cases above mentioned there are features which distinguish them from the case at bar. In them the contract serves no necessary purpose other than to identify the person who should perform the duty. The duty is created by law; existed before the contract was made; an indictment lies for failure to perform it; and the public is the direct, and the state the indirect, beneficiary. In the case at bar the duty, if it exists, did not exist until the contract was made; the contract alone furnishes the measure of the duty; no indictment lies for failure to comply with the contract; and the city is the direct beneficiary, while the property owner is only indirectly and incidentally benefited. We have said that the contract alone creates the duty, if it exists. This is true because it is universally conceded that the city owes

no duty to its property owners to establish waterworks, and, if the city does establish such works, it is not liable to its property owners for neglect in operation. United States v. Sault Ste. Marie (C. C.) 137 Fed. 258; 2 Dill. Municip. Corps. § 975; 28 Cyc. 1303; Boston Co. v. Salem (C. C.) 94 Fed. 238; Metropolitan Co. v. Topeka Co. (C. C.) 132 Fed. 702, 704. We have said that the contract alone furnishes the measure of duty, if it exists. In a case such as we have here it would be clearly erroneous to say that the duty is to lay reasonably large mains, to install hydrants at reasonable intervals, and to maintain a reasonable, or a reasonably adequate, pressure. Such requirements may exceed the requirements of the contract. Consequently, if a duty to the property owner exists, it is a duty to use care to perform the contract. No indictment lies for failure to perform the contract because such breach of contract is neither a crime nor a misdemeanor. The remaining distinction is obvious without elaboration. In a contract to perform a true public duty the citizen is benefited directly. In the case at bar the property owners are indirectly benefited, and only then in the event that the city properly utilizes the water supplied by the water company.

It would seem therefore that we could not consider the defendant here as having entered upon the performance of a public duty, even if the contract itself did not negative such hypothesis.

In so far as the expression "public calling" conveys any meaning other than that implied in the term "public duty," it may here be said that it seems to us that the defendant here has not undertaken a public calling. The contract restricts its calling, in respect to supplying water for combating fire, to that of supplying the city. The defendant distinctly has not entered upon the calling of supplying water, for fire purposes, to the public. In the sense that a public calling is one that brings the one following the calling into contact with the public, in the sense that the calling is such that the public has an interest (even an indirect interest) in the manner in which it is carried on, the defendant has entered upon a public calling. But the question remains whether this particular public calling is such that a liability in tort to the public arises for acts of nonfeasance.

Let us now consider some cases of liability in tort where there is no contract, or in which the contract can be disregarded. Such cases may be illustrated as follows: Where a surgeon is employed by the father of the patient (Gladwell v. Stiggall, 5 Bing. N. C. 733, 35 E. C. L. 393), or by the husband (Pippin v. Sheppard, 11 Price, 400) of the patient, and is liable in tort at the suit of the patient for malpractice or neglect; or where the physician is employed by the county authorities to attend charity patients at the almshouse (Du Bois v. Decker, 130 N. Y. 325, 29 N. E. 313, 14 L. R. A. 429, 27 Am. St. Rep. 529) and is liable in tort to a charity patient for incompetence or neglect; where a manufacturing pharmacist negligently labels a poison as a harmless drug and is held liable in tort to one who is thereby injured and to whom it was administered by a remote vendee (Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455), and the case of a railway company injuring a person at a crossing by neglect, in the absence of statute or ordinance (23 Am. & Eng. Ency. [2d Ed.] 756), or where it is held

174 F.—49

liable notwithstanding compliance with an ordinance (Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485).

The most noticeable feature of these cases, which is common to all of them, is the danger to the public from neglect by the defendant. In each of these cases we may with some propriety say that the defendant had entered upon a dangerous calling. See, also, Oil Co. v. Deselmo, 212 U. S. 159, 178, 29 Sup. Ct. 270, 53 L. Ed. 453—an excellent illustration of a dangerous calling.

In considering whether or not the water company has entered upon a calling to be properly classed as "dangerous," we are confronted by some differences between the cases instanced above and the case at bar.

There is in marked degree a helplessness on the part of the physician's patient, of the one who takes a mislabeled drug, and of the traveler on a level crossing, which is far from being so pronounced in the case of the property owner. He still has fire insurance, chemical extinguishers, and the same crude methods of combating fires in their incipiency that he had before the city water plant came into existence.

If the danger of neglect in water company cases were so imminent as in the cases above mentioned, in view of the length of time that water companies have been in existence, we should have a "cloud" of decisions asserting liability in tort to property owners on the ground of "dangerous calling"; whereas, the absence of authority for taking such position is most marked.

If neglect by a water company in respect to supplying water for combating fire is so dangerous to the public that the company must be held to have entered upon a "dangerous calling," it would seem that the courts would long since have swept away the defense on the part of the city (furnishing water for fire purposes) that it is performing a governmental function. "Salus populi suprema lex." The very fact that such defense is so universally held good seems to us a strong argument for holding that the danger to the public from neglect in supplying water for fire purposes is not so imminent or so extreme as to justify the courts in classifying the calling as "dangerous." The citizens had no right of action when the city was doing itself what it has since engaged the water company to do, and they are in no worse plight now. No very good reason suggests itself for holding that danger to the public becomes suddenly the dominant feature of the calling, because a private person or corporation has undertaken it.

There remains a further distinction between the case at bar and the "dangerous calling" cases. In the latter the duty is independent of contract. In the case at bar, if the duty exists, it is created by and originates in a contract made with some one other than the plaintiff, and is so entirely measured by the contract that the supposed duty is simply to perform the contract.

In Longmeid v. Holliday, 6 E. L. & E., 562, 6 Exchq. 761, Baron Parke said:

"There are other cases, no doubt, besides that of fraud, in which a third person, although not a party to the contract, may sue for damage sustained by him if it be broken. These cases occur where there is a wrong done to a person for which he could have a right of action, although no such contract had been made. * * *"

The very fact that the duty, if it exists, originates in, and is only to be measured by, the contract, forbids the conclusion that the duty arises in behalf of any one not in sufficient privity with the contractor to maintain an action ex contractu. In other words, the want of privity which denies to the plaintiff a right of action ex contractu forbids a finding that a duty to the plaintiff is created by the contract.

A difference between the case at bar and the admitted liability in tort of a water company which, for instance, leaves a trench open in a street, is found in the respect last above mentioned. In leaving a trench open, the duty to the person injured thereby does not originate in and is not measured by the contract between the city and the water company. The duty exists independently of and without reference to the contract. And this difference exists without reference to the further fact that in the case supposed the act complained of is in a sense affirmative, a misfeasance; while in the case at bar the act is negative, a nonfeasance.

Let us now mention a few decided cases, generally accepted as sound, which seem to us to afford precedents for denying the existence of a right of action in tort in the plaintiff here.

In Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, an attorney at law, employed and paid solely by his client and without knowledge as to the purpose for which it was obtained, gave to his client an opinion on the title of real estate which the attorney supposed belonged to his client, to the effect that the title was good and the property unincumbered. The client had previously conveyed the property to another, and this conveyance, although on record, was overlooked by reason of the negligence of the attorney. The client used the opinion and thereby obtained a loan from the bank, mortgaging the real estate as security therefor. By reason of the unreported conveyance the bank lost the loan and thereupon sued the attorney. The court, although not unanimously, held that the attorney was not liable to the bank.

In Winterbottom v. Wright. 10 Mees. & W. 109. it was held that the driver employed by the owners of a coach line could not maintain an action in tort against the builder of the coach, whose negligence in the construction of the coach caused an injury to the plaintiff.

In Longmeid & Wife v. Holliday, 6 Eng. Law & Equity Repts. 562, 6 Exchq. 761, A. sold a lamp manufactured by A. to B., and by reason of negligence in the construction of the lamp B.'s wife was injured. It was held that an action in tort by the wife against A. did not lie.

It cannot be denied that an attorney who prepares an opinion on title must know that it may be used to the injury of some one or more of the public; the coach builder must know that negligence in the construction of a coach, especially if it is to be used in public service, may result in death or injury to some of the public; the manufacturer of lamps must know that a lamp sold by him is likely to be used by others than his immediate purchaser, and that negligence in construction is to such extent dangerous to the public. And yet in these cases liability in tort was denied. A duty to the plaintiff was in each case held not to have existed, and in each case the plaintiff was injured as the result of a breach by the defendant of a contract with a third party.

We do not think it necessary to discuss at length the liability of a water company in case it were under no contract to supply water for fire purposes but nevertheless undertakes to do so. Guardian Trust Co. v. Fisher, 200 U. S. 69, 26 Sup. Ct. 186, 50 L. Ed. 367. We have no such case here, but still it seems not improper to say that in our opinion there would be no liability in tort to the property owner unless there were also a liability ex contractu upon an implied agreement between the company and the property owner. If the consideration was paid by the city, and not directly by certain property owners, it would assuredly prevent the implication of an agreement between the water company and the individual property owners. And inability to maintain an action ex contractu on the part of the property owner would defeat his right to maintain an action ex delicto. If the water company were to collect from certain property owners direct, it is inconceivable that there should not be first an agreement at least as to the amount to be charged, and an implied promise to render some ascertainable service to the property owners paying therefor. No such case is likely to arise; but if it should it would be so unlike the case at bar as to afford us no aid in reaching a proper conclusion.

Among the water company cases in which the question of liability in tort to the property owner was considered and denied may be mentioned: Nickerson v. Bridgeport Co., 46 Conn. 24, 33 Am. Rep. 1, 5; Foster v. Lookout Co., 3 Lea. (Tenn.) 42 (see note 33 Am. Rep. 8); Fowler v. Athens Co., 83 Ga. 219, 9 S. E. 673, 20 Am. St. Rep. 313, 315; Nichol v. Huntington Co., 53 W. Va. 348, 44 S. E. 290; Britton v. Green Bay Co., 81 Wis. 48, 51 N. W. 84, 29 Am. St. Rep. 856; House v. Houston Co., 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532; Ancrum v. Camden Co., 82 S. C. 284, 64 S. E. 151, 21 L. R. A. (N. S.) 1029; Fitch v. Seymour Co., 139 Ind. 214, 37 N. E. 982, 47 Am. St. Rep. 258.

Our conclusion is that the judgment below must be affirmed.