**OLD STONE BANK, Plaintiff,**

v.

**FIDELITY BANK, Defendant and Third–Party Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Fidelity National Bank of Fort Worth, Third–Party Defendant.**

**Civ. A. No. 4–88–726–E.**

United States District Court, N.D. Texas, Fort Worth Division.

Oct. 9, 1990.

P. Talmage Boston and David Tobias, Payne & Vendig, Dallas, Tex., for plaintiff.

Robert Warren and James Lanter, Decker, Jones, McMackin, McLain, Hall & Bates, Fort Worth, Tex., for defendant and third-party plaintiff.

Robert Clary and Debra Tourtellotte, Johnson, Bromberg and Leeds, Dallas, Tex., for third-party defendant.

## ORDER

MAHON, District Judge.

Defendant and third-party plaintiff, Fidelity Bank ("New Fidelity"), filed a motion for summary judgment. The plaintiff, Old Stone Bank ("Old Stone"), and the third-party defendant, Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Fidelity National Bank of Fort Worth ("Old Fidelity"), have responded thereto. The FDIC filed its motion for summary judgment and Old Stone and New Fidelity have responded thereto. After a thorough review of the issues and applicable law, the Court makes the following determination.

### FACTUAL SUMMARY

A.   On or about June 1, 1983, Hines/100 Main Assoc., Ltd. ("Hines"), the then owner and holder of fee simple title in and to a building located at 100 Main St., Fort Worth, Tarrant County, Texas ("the Building"), as Lessor, entered into a commercial lease and parking agreement (the "1983 Lease"), pertaining to the first floor and basement of the building with an entity called B.M.K. Resources, Inc. ("BMK"), as Lessee.[1]

B.   The term of the Lease was for 120 months beginning on February 1, 1984, and ending on January 31, 1994.

C.   On or about October 22, 1984, BMK fully assigned its interest in the Lease as Lessee to Fidelity National Bank of Fort

---

1. Factual summary paragraphs A–S are stipulated facts as set forth in the Pre–Trial Order signed by this Court on April 16, 1990.

Worth ("Old Fidelity"), and at that time Hines agreed to look to Old Fidelity as Lessee, and Old Stone consented to that assignment.

D. On or about January 7, 1985, the lienholder and lender on the Building transferred, assigned, granted and conveyed to Old Stone Bank, all financing agreements and security agreements pertaining to financing of the Building.

E. On or about January 11, 1985, Old Fidelity, Hines and Old Stone executed an instrument entitled "Non–Disturbance Attornment and Subordination Agreement."

F. On or about August 7, 1986, Hines signed a certain promissory note in the principal amount of $580,000.00 payable to Old Stone Bank and secured by a Deed of Trust and Security Agreement and an Assignment of Leases and Rent (and Management) also executed on that same day.

G. Beginning in February, 1988, through the time that it was declared insolvent by U.S. Comptroller of Currency, Old Fidelity failed to pay rent under the 1983 Lease.

H. On May 27, 1988, written notice was given by Old Stone to Old Fidelity to pay rentals directly to Old Stone.

I. On September 13, 1988, 100 Main Associates, Ltd. (successor to Hines) and Old Stone Bank entered into a Renewal Note, a Renewal Extension and Modification Agreement, and an Assignment of Rents and Management in favor of Old Stone Bank. Said agreements were effective June 1, 1988.

J. As consideration for entering into the Renewal Note, Renewal Extension and Modification Agreement, and Assignment of Rents and management which were executed on September 13, 1988 and effective June 1, 1988, Old Stone Bank required 100 Main Associates, Ltd. to enter into a Master Lease Agreement with McLean, Sanders, Price, Head & Ellis ("McLean, `Sanders").

K. On or about October 5, 1988, the U.S. Comptroller of the Currency determined that Old Fidelity was insolvent, and

ordered Old Fidelity closed, took possession of its assets and affairs, and tendered to the Federal Deposit Insurance Corporation ("FDIC") the appointment as Receiver for Old Fidelity.

L. On or about October 5, 1988, the FDIC accepted its appointment as Receiver for Old Fidelity.

M. On or about October 6, 1988, the FDIC as Receiver for Old Fidelity and Fidelity Bank ("New Fidelity") executed a Purchase and Assumption Agreement.

N. Since October 6, 1988, New Fidelity has occupied the first floor and basement of the property at 100 Main St., Fort Worth, Texas, formerly occupied by Old Fidelity. New Fidelity has conducted bank business in that space since that time.

O. Beginning in January, 1989 up until the present time, New Fidelity has paid rent in the amount provided by the Sublease Agreement[2] to McLean, Sanders, which has in turn delivered such rent to 100 Main Associates, Ltd., which has in turn delivered such funds to the property manager, The Centra Group, which has in turn delivered such funds to Old Stone Bank.

P. Since January, 1989, Old Stone Bank has received and not returned the funds paid by Fidelity Bank to McLean, Sanders under the Sublease Agreement.

Q. On or about July 12, 1989, Old Stone Bank and FDIC, Receiver for Old Fidelity, entered into a Settlement Agreement and Release under the terms of which FDIC Receiver paid $250,000 as settlement for all rents owed under the 1983 Lease through the December, 1988 rental payment owed, and under the terms of that settlement, all of Old Stone Bank's claims against Old Fidelity and FDIC, Receiver for Old Fidelity, were released and dismissed with prejudice.

R. On or about January 26, 1989 and January 31, 1989, the FDIC issued letters to the owner of the Building whereby the FDIC exercised its right to disaffirm the 1983 Lease.

2. The Sublease Agreement and its origination is    discussed below.

S.  On or about October 6, 1988, FDIC and New Fidelity entered into an Indemnity Agreement.

In addition to the above-stipulated facts, the Court finds the following facts from the summary judgment record.

The Purchase and Assumption Agreement executed on October 6, 1988, between the FDIC and New Fidelity, contains the following clause which is the heart of both Fidelity and FDIC's motion for summary judgment:

3.6  *Option on Leased Bank Premises.*  Receiver grants to Assuming Bank an exclusive ninety (90) day option [3], commencing at Bank Closing, to take an assignment or sublease of any or all of the Bank Premises which are leased by the Bank, to the extent that the respective lease(s) can be assigned or premises sublet; provided that the exercise of this option with respect to any lease must be as to all premises subject to such lease. If the Assuming Bank exercises this option with respect to any of the leased Bank Premises, or if the Assuming Bank does not exercise this option but subsequently obtains the right to occupy any of the Bank Premises (whether by assignment, lease, sublease, purchase or otherwise), Assuming Bank shall purchase at Book Value all Furniture, Fixtures, Equipment and Leasehold Improvements located therein or thereon. If Assuming Bank exercises its option with respect to any Bank Premises not occupied by Assuming Bank continuously since Bank Closing, Assuming Bank shall pay Receiver rents as determined by Section 3.5 for the period from Bank Closing to such exercise of this option.

If Assuming Bank exercises its option with respect to leased premises, the Receiver shall use its best efforts to assist Assuming Bank in obtaining an assignment or sublease, provided, however, Receiver shall not pay, nor shall it become obligated to pay any monies to the Assuming Bank, the lessor, or any third party as a part of its effort to assist in effectuating such assignment or sublease.

Within one hundred twenty (120) days after Bank Closing, Assuming Bank shall vacate all leased Bank Premises as to which it does not exercise this option.  If the Assuming Bank elects to occupy any Bank Premises for more than fifteen (15) days, it shall provide the Receiver with fifteen (15) days written notice of its intention to vacate prior to vacating such premises.

Pursuant to Section 3.6 of the Purchase and Assumption Agreement, New Fidelity Bank sent a letter to the FDIC on January 12, 1989, whereby New Fidelity stated, *inter alia* [4]:

I have advised you orally and now advise you in writing, the Assuming Bank has *no intention whatsoever of exercising its option of taking an assignment of this lease.* (emphasis added).

The Assuming Bank does reserve the right, pursuant to Section 3.6 of the Purchase and Assumption Agreement, to exercise its option to negotiate a sublease agreement for the bank premises from the current lessee, McLean Sanders Price Head & Ellis, at or prior to the expiration of the option period as now exists or may hereafter be extended.

Following the January 12, 1989 letter, New Fidelity sent a subsequent letter to the FDIC on January 20, 1989 whereby New Fidelity stated, *inter alia:* [5]

This letter will evidence the exercise by Fidelity Bank of its option to occupy the premises formerly occupied by Fidelity National Bank of Fort Worth pursuant to Section 3.6 of the Purchase and Assumption Agreement.

Fidelity Bank, effective as of January 1, 1989, has entered into a Sublease Agreement with McLean Sanders Price Head &

**3.**  The 90 day period for which the option would expire was extended to January 31, 1989.

**4.**  The letter dated January 12, 1989 was written by A. William Brackett.

**5.**  The letter dated January 20, 1989 was written by A. William Brackett.

Ellis, P.C., for the use and occupancy of this space.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment must be entered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

On a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.[6] Thereafter, the party which bears that burden at trial must come forward with competent summary judgment evidence of the existence of a genuine fact issue.[7] In order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[8] Furthermore, the moving party need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof.[9] "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[10]

The following issues are raised by the motions for summary judgment and respective responses:

(1) Whether Old Stone Bank has standing to enforce the Purchase and Assumption Agreement between the FDIC and New Fidelity Bank.

(2) Whether the letter dated January 12, 1989 from New Fidelity to the FDIC oper-

ated as a rejection of the option to take assignment of the 1983 Lease.

(3) Whether New Fidelity took possession via the sublease with McLean, Sanders in full accordance with the terms of the Purchase and Assumption Agreement, Section 3.6.

(4) Whether New Fidelity Bank took an equitable assignment of the 1983 Lease.

(5) Whether the FDIC is entitled to summary judgment on New Fidelity's third-party claim for indemnification.

## OLD STONE BANK'S STANDING

Old Stone Bank's primary, if not only, theory for liability against New Fidelity is based upon certain rights which emanate to Old Stone vis a vis the Purchase and Assumption Agreement between FDIC and New Fidelity. In its Second Amended Complaint, Old Stone alleges that

"On or about October 6, 1988, FDIC and New Fidelity executed a Purchase and Assumption Agreement, under the terms of which and because of the exercise of an option provided under the terms of the Purchase and Assumption Agreement, New Fidelity assumed certain liabilities of Old Fidelity, including the obligations for rent under the Lease and Parking Agreement."[11]

Likewise, in its reply brief to FDIC's motion for summary judgment, Old Stone states:

When the option was exercised, there was an assignment of the 1983 Lease to New Fidelity. This is the basis for Old Stone's claim against New Fidelity. *The assignment of the 1983 Lease created privity of estate between Old Stone and New Fidelity. Because of this privity of estate, Old Stone has standing to*

---

**6.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**7.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**8.** *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**9.** *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2553.

**10.** *Id.*

**11.** Old Stone Bank's Second Amended Petition ¶ 15.

*collect rent from New Fidelity.*[12] (emphasis added).

In order for its theory to wash, Old Stone must overcome the incredible hurdle of showing the Court how Old Stone Bank, a non-party to the Purchase and Assumption Agreement, derived any benefit or right from such Agreement. Old Stone simply can not meet this burden.

Section 17.4 of the Purchase and Assumption Agreement executed between FDIC and New Fidelity on October 6, 1988 provides as follows:

> 17.4 *Successors and Third Parties.* All covenants, representations, warranties, and conditions of this Agreement shall be binding on the successors and assigns of the Assuming Bank and the Receiver. Nothing expressed or referred to herein is intended or shall be construed to give any person other than the Assuming Bank, the Receiver, and the Corporation any legal or equitable right, remedy, or claim under or in respect of this Agreement, or any provision herein contained, it being the intention of the parties hereto that this Agreement, the assumption of obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole benefit of the Assuming Bank, the Receiver, and the Corporation and for the benefit of no other person.

It was and still is the clear intention of the parties to the Purchase and Assumption Agreement that any rights, obligations, options, or any condition of the Agreement, be for the sole benefit of the Assuming Bank, the FDIC as Receiver, the FDIC, and no other. Not only is the Purchase and Assumption Agreement devoid of any intention to convey certain rights to third-parties, the Agreement clearly and unequivocally disclaims any intention to confer any rights or benefits to third-parties.

As a non-party to the Purchase and Assumption Agreement, Old Stone can not enforce any provision of said Agreement unless Old Stone can show that it was an intended beneficiary of any rights or benefits of the Agreement.[13] Moreover, the general rule in Texas is that:[14]

> [O]nly the parties to a contract have the right to complain of a breach thereof; and if they are satisfied with the disposition which has been made of it and all claims under it, a third party has no right to insist that it has been broken.[15]

If however, a party may show that the agreement or contract was "actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary …", he would thus become eligible to bring suit.[16]

Given that it is the language within the four corners of the instrument that controls the Court's determination of whether the parties intended to benefit a third-party, this Court finds that FDIC and New Fidelity, as evidenced by the unequivocal language of the Purchase and Assumption Agreement in Section 17.4, clearly disclaimed any intention to confer rights upon any third-party, including Old Stone Bank. Although Old Stone Bank could argue that it is an incidental beneficiary, this Court noted in *Sowell v. Northwest Cent. Pipeline Corp.* that an incidental beneficiary may not enforce a provision of a contract. 703 F.Supp. at 581. Therefore, the Court finds that no evidence exists to show that

---

**12.** Old Stone Bank's Response to Third–Party Defendant FDIC's Motion for Summary Judgment p. 6.

**13.** *Sowell v. Northwest Cent. Pipeline Corp.,* 703 F.Supp. 575, 581 (N.D.Tex.1988) (Mahon, J.).

**14.** 17.6 of the Purchase and Assumption Agreement provides:

> To the extent that Federal law does not govern, this Agreement shall be construed in accordance with and governed by the laws of the State of Texas (including those laws relating to choice of law) applying to contracts entered into and to be performed within that State.

**15.** *Bruner v. Exxon Co., U.S.A.,* 752 S.W.2d 679, 682 (Tex.App.—Dallas 1989); *See also Merrimack Mutual Fire Insurance Co. v. Allied Fairbanks Bank,* 678 S.W.2d 574, 577 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Republic National Bank v. National Bankers Life Insurance Co.,* 427 S.W.2d 76, 79 (Tex.App.—Dallas 1968, writ ref'd n.r.e.).

**16.** *Republic National Bank,* 427 S.W.2d at 79.

Old Stone Bank was intended to become a third-party beneficiary of the Purchase and Assumption Agreement between FDIC and New Fidelity. The absence of a legal relationship between Old Stone Bank and New Fidelity prevents, as a matter of law, any attempt by Old Stone to enforce a provision of the Purchase and Assumption Agreement, and therefore, Fidelity Bank is entitled to summary judgment.

## JANUARY 12, 1989 LETTER

■ Even if Old Stone Bank had standing to enforce Section 3.6 of the Purchase and Assumption Agreement, New Fidelity would be entitled to judgment as a matter of law because New Fidelity never took an assignment of the 1983 Lease. Old Stone incorrectly argues that New Fidelity exercised an option under Section 3.6 of the Purchase and Assumption Agreement whereby New Fidelity was granted by the FDIC a 90 day option to take an assignment of any or all of the bank premises. While it is true that New Fidelity maintained the option to take an assignment of the 1983 Lease, New Fidelity, by its letter dated January 12, 1989, clearly and unequivocally stated its intention of not taking an assignment, but, rather, reserving New Fidelity's right pursuant to Section 3.6 of the Agreement, to occupy the bank premises through the means of a sublease with McLean, Sanders.

In Old Stone's tunnel vision interpretation of Section 3.6, Old Stone emphatically argues that New Fidelity had only one option, and that was to take the assignment or vacate the bank premises. To support this misplaced argument, Old Stone cites to conveniently redacted portions of William Brackett's deposition. In the deposition excerpts, Mr. Brackett is found agreeing with counsel for Old Stone that:

"Assuming that the Fidelity Bank, ... exercised its option per the purchase and assumption agreement, ... the only option it [New Fidelity] had was to exercise an option to step into the shoes of the Old Fidelity under the '83 lease ...

This begs the question. While Mr. Brackett may have been pigeonholed into agreeing with counsel that only one option existed, the fact remains that Brackett testified that New Fidelity did not elect such option and in fact rejected it. Old Stone overlooked that Brackett testified, beginning on Line 19, p. 27 of his deposition, as follows:

Well, they [New Fidelity] didn't exercise their option to assume the old lease. They [New Fidelity] exercised an option to occupy the space by subletting from the law firm. That's what they did.

Beginning on Line 9, p. 34, Brackett further says "... I do not believe that Fidelity Bank ever agreed to assume the lease with Hines/100." Nor does the Court find any evidence to show that New Fidelity ever agreed to take an assignment of the 1983 Lease.

Section 3.6 specifically provides that New Fidelity could take a sublease of any or all of the bank premises to the extent that they could be subleased. The prerequisites for sublease were met by New Fidelity. By the requirement of Old Stone, McLean, Sanders maintains a Master Lease of the subject bank premises. Pursuant to a valid sublease agreement, ratified by Old Stone's acceptance of payment, New Fidelity obtained possessory rights to the bank premises. New Fidelity is obligated to pay only rentals to McLean, Sanders pursuant to the sublease agreement.[17] The summary judgment evidence clearly shows that New Fidelity is not obligated nor indebted to pay rentals to Old Stone Bank pursuant to the 1983 Lease, therefore, Fidelity Bank is entitled to judgment as a matter of law.

## EQUITABLE ASSIGNMENT

Because Old Stone's theory of equitable assignment is premised on the assumption that New Fidelity exercised its option to take an assignment of the 1983 Lease, the Court's ruling above renders this argument moot.

## NEW FIDELITY'S THIRD–PARTY CLAIM FOR INDEMNIFICATION

■ The Court finds that there exists a material fact issue as to whether the FDIC

---

17. The undisputed facts show that since January 1, 1989, Fidelity Bank has paid to its landlord rentals pursuant to the sublease agreement. These rentals have been continuously paid to and accepted by Old Stone Bank pursuant to its financing agreements.

is liable to New Fidelity under the indemnification agreement executed between FDIC and New Fidelity on October 6, 1988. Furthermore, FDIC's argument that New Fidelity, as a prevailing party on its motion for summary judgment, can recover its attorney fees from Old Stone Bank, is at odds with the general rule in Texas. Therefore, the Court DENIES FDIC's motion for summary judgment insofar as it relates to New Fidelity's indemnification agreement.

SUMMARY

For the foregoing reasons, the Court GRANTS Fidelity Bank and FDIC's motion for summary judgment as to all claims asserted by plaintiff, Old Stone Bank against Fidelity Bank. The Court DENIES FDIC's motion for summary judgment as it relates to Fidelity Bank's third-party claim for indemnification. Because the Court finds no just reason for delay, the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure hereby deems this Order to be a final judgment as it relates to plaintiff's affirmative claims against Fidelity Bank. Costs of Court incurred by Fidelity in defending this action, with the exception of attorneys fees, are taxed against the plaintiff, Old Stone Bank. A judgment consistent with this opinion will be executed herewith.