# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Jeanne Beverly, individually and on behalf of others similarly situated, Respondent,

v.

Grand Strand Regional Medical Center, LLC, Petitioner.

Appellate Case No. 2020-000710

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Horry County
Benjamin H. Culbertson, Circuit Court Judge

---

Opinion No. 28084
Heard June 15, 2021 – Filed February 23, 2022

---

### AFFIRMED

---

James Lynn Werner, William R. Thomas, and Katon Edwards Dawson Jr., of Parker Poe Adams & Bernstein, LLP, of Columbia, for Petitioner.

Jordan Christopher Calloway, John Gressette Felder Jr., and Chad Alan McGowan, of McGowan Hood & Felder, LLC, of Rock Hill; Sidney L. Major Jr. and Roy F. Harmon III, of Harmon & Major, PA, of Greenville; Jeffrey Christopher Chandler, of Chandler Law Firm, of Myrtle Beach, all for Respondent.

**JUSTICE FEW:** This is an appeal from an order pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure dismissing Jeanne Beverly's claims against Grand Strand Regional Medical Center, LLC. The primary question before us relates to whether Beverly is a third-party beneficiary who may bring an action to enforce a contract to which she is not a party. The specific question we address is whether a contract clause stating, "This Agreement is not intended to, and shall not be construed to, make any person . . . a third party beneficiary" overrides an otherwise manifestly clear purpose of the contracting parties to provide a direct benefit to non-contracting parties. Mindful that we are reviewing a Rule 12(b)(6) dismissal order—not an order on the merits—we hold it does not. We affirm the court of appeals' opinion reversing the 12(b)(6) dismissal. We remand the case to circuit court for discovery and trial.

## I.     Alleged Facts and Procedural History

Blue Cross Blue Shield of South Carolina (BCBS) is a mutual insurance company that provides health insurance coverage through Member Benefits Contracts to its Members. To improve its delivery of health insurance coverage, BCBS established a Preferred Provider Organization (PPO). A PPO is a network that connects a health insurance provider's Members with participating health care service providers. Generally, PPO Members pay less if they use PPO Providers for health care services, and PPO Providers gain access to more customers by their participation as a PPO Provider. Beverly is a BCBS Member.

Grand Strand Regional Medical Center, LLC, provides inpatient and outpatient health care services at several locations in the Myrtle Beach area. In 2005, Grand Strand and BCBS entered into a contract labeled "Institutional Agreement." The Institutional Agreement contains section 16.16, entitled, "No Third Party Beneficiaries," that provides in part, "This Agreement is not intended to, and shall not be construed to, make any person or entity a third party beneficiary." Grand Strand and BCBS are the only parties to the Institutional Agreement.

Grand Strand made two promises to BCBS in the Institutional Agreement that Beverly contends create rights she and other BCBS Members may enforce. First, Grand Strand promised it "shall seek payment for Covered Services solely from" BCBS and "will not solicit any payment from [BCBS] Members," except in circumstances Beverly alleges are not applicable in this case. Second, Grand Strand promised to provide Covered Services to BCBS Members at a discounted rate. In

exchange for these and other promises, BCBS designated Grand Strand a PPO Provider.

Beverly was injured in an automobile accident on September 6, 2012. The same day, she received health care services at a Grand Strand emergency room for injuries she sustained in the accident. Beverly alleges she provided Grand Strand proof of her status as a BCBS Member. Some time later, Beverly received a bill directly from Grand Strand for $8,000. Beverly alleges the $8,000 bill does not reflect the discount Grand Strand promised in the Institutional Agreement.

Beverly filed this action on behalf of herself and a class of similarly situated BCBS Members who were denied the right to have their bills processed and discounted according to Grand Strand's promises in the Institutional Agreement. She alleged causes of action for breach of contract on a third-party beneficiary theory, breach of fiduciary duty,[1] and unjust enrichment. The circuit court granted Grand Strand's motion to dismiss on the grounds Beverly is not a third-party beneficiary, Grand Strand did not owe Beverly a fiduciary duty, and Beverly's unjust enrichment cause of action fails as a matter of fact. The court of appeals affirmed the circuit court's ruling that Grand Strand owed no fiduciary duty, but otherwise reversed. *Beverly v. Grand Strand Reg'l Med. Ctr., LLC*, 429 S.C. 502, 839 S.E.2d 468 (Ct. App. 2020). We granted Grand Strand's petition for a writ of certiorari to review the court of appeals' ruling only on the questions of whether Beverly is a third-party beneficiary of the Institutional Agreement and whether Beverly stated a valid claim for unjust enrichment.

## II. Analysis

Rule 12(b)(6) permits a party to assert by motion the defense that a claim "fail[s] to state facts sufficient to constitute a cause of action." The theory of Grand Strand's motion in this case is that Beverly has no cause of action because—as a matter of law—the Institutional Agreement cannot be interpreted to grant Beverly third-party beneficiary status. In other words, Grand Strand contends the Institutional Agreement is subject to only one interpretation: it clearly and unambiguously *does not* make Beverly a third-party beneficiary who may bring an action to enforce the Institutional Agreement. The circuit court interpreted the Institutional Agreement and determined Grand Strand is correct. The court of appeals interpreted the

---

[1] Beverly labeled this claim "Bad Faith" in her complaint, but the text of the complaint makes clear the claim is based on an alleged breach of fiduciary duty.

Institutional Agreement and determined Grand Strand and the circuit court are not correct.  We review the decisions of both courts using the same standard they used.  *Cole Vision Corp. v. Hobbs*, 394 S.C. 144, 149, 714 S.E.2d 537, 539 (2011).  Therefore, we also must interpret the Institutional Agreement to determine whether it clearly and unambiguously does not make Beverly a third-party beneficiary.

## A.      Third-Party Beneficiary

Ordinarily, a person who is not a party to a contract may not enforce the contract in a civil action.  We have long recognized, however, that when the parties intentionally provide in the terms of the contract a direct benefit to a third party, the third party may enforce the contract.  *Fabian v. Lindsay*, 410 S.C. 475, 488, 765 S.E.2d 132, 139 (2014); *Helms Realty, Inc. v. Gibson-Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005); *Touchberry v. City of Florence*, 295 S.C. 47, 48-49, 367 S.E.2d 149, 150 (1988); *Ancrum v. Camden Water, Light & Ice Co.*, 82 S.C. 284, 294, 64 S.E. 151, 155 (1909).  As we stated in *Fabian*, "if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person."  410 S.C. at 488, 765 S.E.2d at 139 (quoting *Windsor Green Owners Ass'n, Inc. v. Allied Signal, Inc.*, 362 S.C. 12, 17, 605 S.E.2d 750, 752 (Ct. App. 2004)).

In this case, the operative terms of the Institutional Agreement clearly indicate Grand Strand and BCBS entered the contract with a motivating purpose to provide BCBS Members with a direct benefit.  We begin with Grand Strand's promise it "will not solicit any payment from [BCBS] Members" and "[Grand Strand] shall seek payment for Covered Services solely from [BCBS]."  The primary and direct purpose and effect of this promise is to relieve Beverly and other Members of the burden of responding to bills from Grand Strand for Covered Services.  The promise thus ensures Beverly and other Members will not be required to file insurance claims because Grand Strand promised to look only to BCBS for payment for Covered Services.

The second promise—to provide Covered Services to BCBS Members at a discounted rate—primarily benefits BCBS, which under the terms of the applicable Member Benefits Contract and the PPO, must pay Grand Strand for those services.  Nevertheless, the promise also directly benefits BCBS Members.  The allegations in this case demonstrate the point.  To the extent Grand Strand billed Beverly for Covered Services without the discount and Beverly paid the bill, Beverly was deprived of the benefit—cost savings—of a key promise in the Institutional

Agreement. Thus, while our primary focus is on Grand Strand's promise to not directly bill BCBS Members, the promise to provide Covered Services at a discount is important to the analysis of whether Grand Strand and BCBS intended to provide a direct benefit to BCBS Members.

In addition to the clear language of these promises, other terms in the Institutional Agreement indicate a mutual intent on the part of BCBS and Grand Strand to directly benefit BCBS Members. In section 1.1, the Institutional Agreement states BCBS created its PPO "for the benefit of its Members." Grand Strand's promise not to directly bill BCBS Members for Covered Services except in limited circumstances was clearly solicited by BCBS for the fulfillment of that purpose. In section 1.2, the Institutional Agreement acknowledges Grand Strand made both promises because it "desires to become a PPO provider to allow it to provide Covered Services under the terms of this Agreement." Thus, the operative terms of the Institutional Agreement indicate Grand Strand made a business decision to become a BCBS PPO provider, which necessitated the making of these promises for the benefit of BCBS Members, and which promises BCBS solicited for the benefit of its Members.

Typically, the third-party beneficiary question arises from a situation in which a person who is not a party to the contract attempts to bring a civil action against a party to the contract for damages allegedly caused to the non-party by the party's breach. *See, e.g.*, *Helms Realty*, 363 S.C. at 340, 611 S.E.2d at 488 (real estate broker as alleged third-party beneficiary unsuccessfully sued client for lost commission due to client's alleged breach of sales contract with potential buyer); *Windsor Green Owners Ass'n*, 362 S.C. at 20, 605 S.E.2d at 754 (homeowner's association as alleged third-party beneficiary unsuccessfully sued condominium owner to enforce owner's lease with tenant to collect damages caused to association by tenant in breach of lease); *see also Ancrum*, 82 S.C. at 294, 64 S.E. at 155 ("Where one person makes a promise for the benefit of a third person, that person may maintain an action on such promise." (quoting *Brown v. O'brien*, 30 S.C.L. 110, 111 (1 Rich. 268, 270) (1838))).

Grand Strand's promise to bill only BCBS for Covered Services presents—at least initially—a different situation. When Beverly—or any BCBS Members she purports to represent—received Covered Services from Grand Strand, a contract arose pursuant to which Grand Strand provided the services, and Beverly agreed to pay for the services. If Grand Strand breached the contract in regard to the services it rendered, then Beverly had a right of action for breach of contract as a party to the contract. Likewise, if Beverly breached the contract in regard to her obligation to pay for the services, then Grand Strand had a right of action to collect payment under the contract. If Grand Strand breached the Institutional Agreement by billing

Beverly directly for Covered Services, then the question does not immediately arise whether Beverly may bring an action for damages against Grand Strand. Rather, the first question is whether Beverly may *defend* an action by Grand Strand to collect on the improperly submitted direct billing.

Under the terms of the Institutional Agreement, BCBS and Grand Strand clearly intended that Beverly—any BCBS Member—may defend an action on the basis of Grand Strand's promise in the Institutional Agreement to not bill Members directly except in certain circumstances. To illustrate our point, we present an example. When a BCBS Member receives medically necessary Covered Services to which Grand Strand's promise to directly bill BCBS clearly applies, the Member likely must pay a deductible or co-payment pursuant to the terms of the applicable Member Benefits Contract. In this scenario, Grand Strand is obligated under the Institutional Agreement to bill BCBS for the portion of the cost not attributable to the deductible or co-payment. Grand Strand is entitled, however, under the terms of the Institutional Agreement, to bill the Member directly for the deductible or co-payment. If, despite the clarity of Grand Strand's obligations and rights, it nevertheless bills the Member for the entire charge, the Member refuses to pay more than the deductible or co-payment, and Grand Strand files suit against the Member, then it is incomprehensible that the Institutional Agreement does not grant the Member the right to defend the lawsuit on the basis of Grand Strand's promise to BCBS to bill only BCBS. To this extent, the Member receives a direct benefit from the Institutional Agreement. This benefit may be enforced by the Member as a third-party beneficiary to the Institutional Agreement in *defending* a civil action.

The Court discussed this point during oral argument, and counsel for Grand Strand agreed, stating, "She certainly could assert that as an affirmative defense, without question. I agree with you." Counsel would not view his agreement on the point as a concession, however, and we agree the point is not dispositive. Rather, the fact the Institutional Agreement grants Beverly third-party rights to *defend* an action by Grand Strand frames the narrow question we now address: does section 16.16 clearly and unambiguously defeat Beverly's otherwise clear third-party status so that she has no right to *bring* an action to enforce the Institutional Agreement?

Generally, the parties to a contract may set forth limitations on the remedies available to enforce the contract. *See, e.g.*, *Bannon v. Knauss*, 282 S.C. 589, 592, 320 S.E.2d 470, 472 (Ct. App. 1984) (stating "the parties may agree that the liquidated damages specified in the contract are the sole remedy for breach"); *see also* 7 WILLISTON ON CONTRACTS § 15:12 (4th ed. 2010) ("[T]he parties are free to bargain away the right they would otherwise have to damages caused by a breach

. . . ."). This Court held long ago the right to limit remedies extends to remedies available to any third-party beneficiaries. In *Ancrum*, Camden Water, Light & Ice Company entered a contract in 1903 with the City of Camden "to furnish to the city of Camden water for the extinguishment of fires and other municipal purposes, and to the inhabitants of the city water for private purposes." 82 S.C. at 288, 64 S.E. at 152. In 1907, a resident of the City lost a building due to a fire. *Id.* The resident brought a breach of contract action against Camden Water alleging the "fire . . . would have been extinguished, without great damage . . . but for the fact that on account of the negligence of the defendant, the water mains and hydrants . . . furnished no appreciable water pressure." 82 S.C. at 288, 64 S.E. at 152-53. We recognized the residents of the City were "beneficiaries of the contract," 82 S.C. at 293, 64 S.E. at 154, and generally, "Where one person makes a promise for the benefit of a third person, that person may maintain an action on such promise," 82 S.C. at 294, 64 S.E. at 155 (citation omitted). Nevertheless, we affirmed the dismissal of the resident's action against Camden Water in part because the contract "fixed and limited the consequences of the defendant's breach" to "a forfeiture of [Camden Water's] franchise." 82 S.C. at 297, 64 S.E. at 156.

This case, however, is different from *Ancrum* and other cases where parties limit the available remedies. Here, section 16.16 does not address the remedy Beverly may pursue for loss of the benefit to which she was clearly entitled. Rather, it appears to set forth a legal conclusion directly contrary to decades of well-established South Carolina case law. Our law provides that when the parties to a contract clearly intend to provide a third party a direct benefit, the legal conclusion that flows from their intent is that the third party achieves the status of third-party beneficiary. 82 S.C. at 294, 64 S.E. at 155. Section 16.16 does nothing to deprive Beverly and other BCBS Members of the rights promised. Grand Strand's promise to bill only BCBS is not affected by section 16.16. Section 16.16 simply attempts to change the legal conclusion our courts have held flows from the provision of rights to a third party. *Accord Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 931 (7th Cir. 2003) (holding the plaintiff "stated a valid third-party beneficiary claim under Illinois law" despite a contract clause stating "nothing herein is intended to create any third party benefit" because the court found another provision of the contract "clearly confers an intended benefit on" the third party).

That section 16.16 sets forth a legal conclusion is made even more clear by Grand Strand's attempt to tell this Court how it "shall" construe the Institutional Agreement. The construction of a contract is a matter of law. *Crenshaw v. Erskine Coll.*, 432 S.C. 1, 26, 850 S.E.2d 1, 14 (2020). Following the guidance of other courts over several centuries, this Court has recognized a comprehensive set of principles of law

that govern the construction of contracts. *See generally* 5C SOUTH CAROLINA DIGEST, *Contracts* K143–176 (West 2018) (compiling South Carolina appellate court decisions setting forth principles of contract construction from 1783 to present). The drafters of a contract to be construed under South Carolina law do not write the law governing contract construction; they follow it. Thus, the phrase, "This Agreement . . . shall not be construed to . . . make any person or entity a third party beneficiary" does not clearly and unambiguously change the legal effect of otherwise clear operative language.[2]

Grand Strand cites several cases in support of its argument the Institutional Agreement "include[s] an express third-party beneficiary disclaimer" that clearly and unambiguously eliminates all third-party beneficiary claims. Each of the cases Grand Strand cites is distinguishable from this case, and none of the cases are contrary to this Court's construction of the Institutional Agreement. The first case on which Grand Strand relies is *Lightsey v. Toshiba Corporation*, an unpublished decision of the United States District Court for the District of South Carolina. Civ. A. No. 9:18-cv-190, 2019 WL 5872168 (D.S.C. Mar. 4, 2019). *Lightsey* is distinguishable from this case in the first place because the district court does not recite any statement of the parties' otherwise clearly-stated intent to provide a direct benefit to a third party. In addition, *Lightsey* was decided on the basis of New York law, 2019 WL 5872168, at *3, and the Second Circuit opinion on which the district court relied in *Lightsey* is completely consistent with our holding in this case. *See India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) (holding the clause "entitled 'No Third Party Beneficiaries'" was effective to defeat third party beneficiary rights because it "clearly provided" the contract was not "intended to create any right, *claim* or *remedy* in favor of any person or entity other than the

---

[2] We recently ruled that an at-will employment relationship is based on a contract. *Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 85, 866 S.E.2d 337, 342 (2021). If the employment contract in *Hall* had been for a definite term and provided Hall could be terminated only for cause, but the contract nevertheless recited in clear terms Hall's employment was "at-will," we would scoff at the notion that recitation of at-will employment overrides the otherwise clear intent of the parties the employee was not at-will. South Carolina law provides that an employee with a contractual term who may not be fired except for cause is not an at-will employee. *See Cape v. Greenville Cnty. Sch. Dist.*, 365 S.C. 316, 319, 618 S.E.2d 881, 883 (2005) (explaining circumstances in which an employment contract is not at-will). Section 16.16 is no more convincing or effective in defeating Beverly's otherwise clear third-party rights than would be this hypothetical attempt to re-write South Carolina employment law.

parties") (emphasis added). Thus, the *Lightsey* court's statement that "under New York law, clauses that expressly disclaim third-party rights are enforceable and controlling" does not support Grand Strand's position in this case. Rather, under New York law, when a contract "clearly provides" it does not "create any right, *claim* or *remedy*" for a third person, the clause is enforceable. The Institutional Agreement does not contain a disclaimer clearly precluding any right, claim, or remedy.

The second case on which Grand Strand relies is also a decision of our district court which, though perfectly sound in its reasoning, has nothing to say about whether a disclaimer clause is effective to extinguish third-party beneficiary rights. *See 1500 Range Way Partners, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 800 F. Supp. 2d 716, 721 n.3 (D.S.C. 2011) (stating only, "Generally, third-party beneficiary status is exceptional and should not be granted absent any intention of the parties to create such status in the contract"). The third case on which Grand Strand relies is *Old Stone Bank v. Fidelity Bank*, 749 F. Supp. 147 (N.D. Tex. 1990). In that case, Old Stone Bank attempted to enforce a lease agreement to which it was never a party. The district court first noted that—unlike the Institutional Agreement—the contract at issue "is . . . devoid of any intention to convey certain rights to third-parties." 749 F. Supp. at 152. The district court then addressed a clause the court stated "clearly disclaimed any intention to confer rights upon any third-party." *Id.* The clause in *Old Stone Bank* is similar to section 16.16 of the Institutional Agreement in that it uses the "shall [not] be construed" language we find problematic. The clause is quite different, however, in that it provides the agreement is not "intended . . . to give any person other than the [parties] any legal or equitable right, *remedy*, or *claim*." *Id.* (emphasis added). Because the clause at issue in *Old Stone Bank* specifically limits the claims and remedies available to enforce the contract, it is entirely consistent with our holding in this case.[3]

[3] In our research, we found several cases in which courts make statements that appear to support Grand Strand's position. *See, e.g.*, *Black ± Vernooy Architects v. Smith*, 346 S.W.3d 877, 885 (Tex. App. 2011) ("In light of the preceding, particularly the clear language expressly disavowing third-party beneficiaries, we must conclude [the parties] assumed no contractual duty to third-parties to the agreement . . . ."); *RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 320 (Iowa 2006) ("When a contract expressly negates the creation of third-party beneficiaries, we have rejected the claim that such status exists."). In each case, however, the applicable agreement contains further language that specifically limits the remedies or actions available to any third-party beneficiary. *Black ± Vernooy Architects*, 346 S.W.3d at 885 (noting "the agreement specifically stated that '[n]othing contained in this Agreement shall create . . . a cause of action in favor of a third party'") (alteration

We have little doubt Grand Strand—perhaps also BCBS—was attempting to protect itself from civil liability by including section 16.16 in the Institutional Agreement. The proper manner in which to protect oneself from liability, however, is to clearly and accurately express the parties' mutual intent in the operative language of the agreement, or clearly and specifically limit the remedies available for a breach, not to attempt to change the legal consequences of the parties' otherwise clearly-expressed intent.

There is no dispute Beverly is a third-party beneficiary to the extent a BCBS Member may *defend* an action by Grand Strand on the basis of the Institutional Agreement. Mindful that we are reviewing a Rule 12(b)(6) dismissal order—not an order on the merits—we hold section 16.16 of the Institutional Agreement does not clearly change this third-party status so as to prevent a Member from bringing an action to enforce the promises discussed above.

### B.    Quantum Meruit

As we stated in the procedural history section, the circuit court dismissed Beverly's unjust enrichment as a matter of *fact*. We adopt the explanation given by the court of appeals in reaching its conclusion "it was error for the circuit court to dismiss the quantum meruit claim at the 12(b)(6) stage." 429 S.C. at 516, 839 S.E.2d at 475.

### III.    Conclusion

We hold the court of appeals correctly reversed the circuit court's Rule 12(b)(6) dismissal order. We remand the case to the circuit court for discovery and trial.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**

---

in original); *RPC Liquidation*, 717 N.W.2d at 320-21 ("Notwithstanding the above, *it is specifically agreed between the parties executing this contract that it is not intended . . . to authorize anyone not a party to this contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this contract*."). We believe the operative language limiting the available remedies, not the summary language essentially stating "no third-party beneficiaries," determines the outcome of those cases.